**SIGNED this 12 day of May, 2025.**



_____
**Robert M. Matson
United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| In re: | Case No. 24-10535-RMM |
| Donald Thomas and Carol T. Thomas | |
| | Chapter 13 |
| Debtors | |
| 21st Mortgage Corporation | |
| Objecting Party | |
| vs. | Contested Matter |
| Donald Thomas and Carol T. Thomas | |
| Respondents | |

### MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION

Before the Court is the Objection to Confirmation [Doc. 13] filed by 21st

Mortgage Corporation ("21st Mortgage"), a creditor secured by a security interest in

1

Debtors' manufactured home. 21st Mortgage objects to confirmation of Debtors' Chapter 13 Plan [Doc. 2] because the Plan does not provide for full payment of 21st Mortgage's claim but rather proposes to reduce its secured claim to the value of the manufactured home. This proposal, contends 21st Mortgage, is impermissible under the hanging paragraph of § 1325(a).[1] Debtors contend the hanging paragraph does not apply to 21st Mortgage's claim.

The Objection came before the Court on April 1, 2025, at 2:00 PM, in connection with Debtors' Plan confirmation hearing. Christopher Hall appeared on behalf of the Debtors. Jason Godwin appeared on behalf of 21st Mortgage Corporation. Mike Jones appeared on behalf of the Chapter 13 Trustee, who took no position on the Objection.

21st Mortgage and Debtors agreed on the record at the hearing that the relevant facts and evidence are undisputed. They further agreed that the objection presents a limited and purely legal issue: whether a manufactured home is a "motor vehicle" for purposes of the hanging paragraph of § 1325(a). The Court took the matter under advisement and asked the parties to submit briefs and stipulations as to facts and evidence.

The parties submitted briefs as well as the requested stipulations. *See* Docs. 29, 30.     The Court has reviewed the parties' submissions as well as the relevant legal authority. As explained below, the Court concludes that a manufactured home is not a "motor vehicle" under the hanging paragraph of § 1325(a).

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure.

## I.    Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the U.S. District Court for the Middle District of Georgia's Amended Standing Order of Reference, General Order 2012-1 (Feb. 21, 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) (O).

## II.    Facts & Debtors' Plan

21st Mortgage is engaged in the business of lending money secured by real estate and/or manufactured housing.[2] On or about May 31, 2023, Debtors entered into that certain Secured Transaction ("Loan") with 21st Mortgage Corporation where the Debtors borrowed $48,819.00 from 21st Mortgage for the purchase of a used 1999 Merit Manufactured Home with Vehicle Identification Numbers of FLHML2P357Y21978A/B ("Manufactured Home").[3]

The Loan was secured by the Manufactured Home, and a true and correct copy of the Consumer Loan Note, Security Agreement and Disclosure Statement wasattached to 21st Mortgage's proof of claim in this case.[4] The Loan was secured only by the Manufactured Home and does not encompass the real estate upon which the Manufactured Home sits.[5] It is undisputed that Debtors reside in the Manufactured Home.[6]

---

[2] Joint Stipulation of Facts ¶ 2.
[3] Joint Stipulation of Facts [Docs. 29-1, 30-1] ¶ 5.
[4] Joint Stipulation of Facts ¶ 6.
[5] Joint Stipulation of Facts ¶ 7.
[6] While this fact is not in the Joint Stipulations of Fact, the parties have consistently referred to the Manufactured Home as Debtors' residence, in both filings and at the hearing. *See* 21st Mortgage Objection to Confirmation at 1 (stating Debtors "currently reside" in the Manufacture Home); Debtors' Petition at 2 [Doc. 1 at 2] and Schedule A/B [Doc. 1 at 10] (showing Debtors reside at 192 Dori Drive,

3

Debtors filed this Chapter 13 case on June 7, 2024.[7] The bankruptcy filing was within 910 days of the Loan being made but after 365 days of the Loan being made.[8]

21st Mortgage filed a proof of claim in this case asserting a secured claim in the amount of the $49,640.09 with an annual interest rate of 9.89%. *See* Claim 1-1. In their Chapter 13 Plan [Doc. 2], Debtors propose reducing the secured claim to the value of the Manufactured Home (which Debtors contend is $14,290), to be paid at a rate of 5.00%. As to the remaining, unsecured portion of 21st Mortgage's claim, the Court notes that the Plan provides for payment of $100 to unsecured creditors to be distributed pro rata.

### III. Law & Analysis

#### A. Cramdown Generally

"Chapter 13 debtors enjoy 'broad power to modify the rights of the holders of secured claims.'" *In re Paschen*, 296 F.3d 1203, 1205 (11th Cir. 2002) (quoting *In re Eubanks,* 219 B.R. 468, 470 (B.A.P. 6th Cir.1998)). *See also, e.g.*, 11 U.S.C. § 1322(b)(2) (stating a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). But this right is subject to the requirements and limitations imposed by Chapter 13's plan confirmation provisions.

---

Cairo, Georgia, and own a mobile home at that location); Audio Recording of April 1, 2025, Hearing at 0:00:26 to 0:00:34 and 0:01:53 to 0:01:54 (21st Mortgage Counsel sating, "Our objection's based on a 910 rule for a manufactured home that is the primary residence, dealing with the hanging paragraph"; Debtors' Counsel stating, "It is their residence."). The audio recording is attached to the document docketed on April 1, 2025, as "PDF with Attached Audio File."

[7] While the parties stipulated this case was filed "on or about" June 7, 2024, the Court takes judicial notice of the precise filing date.

[8] Joint Stipulation of Facts ¶ 8.

4

"The manner in which secured claims may be modified in an acceptable Chapter 13 plan is governed by § 1325(a)(5)." *In re Paschen*, 296 F.3d at 1205–06. *See also, e.g.*, 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1] ("The Code's criteria for the treatment of secured claims are set forth in section 1325(a)(5)."). Specifically, under § 1325(a)(5), "the plan cannot be confirmed unless, with regard to each secured claim, one of the three requirements in Code § 1325(a)(5) is met." CHAPTER 13 PRACTICE & PROCEDURE § 5:10.

Relevant here is the requirement at § 1325(a)(5)(B), the so-called cramdown provision, which applies when the debtor wants to keep the property, and the creditor does not consent to the plan. Under the cramdown provision, a Chapter 13 plan can be confirmed over a secured creditor's objection if the creditor retains its lien and the plan provides for payment of the present value of the creditor's "allowed secured claim."

The amount of an "allowed secured claim" is determined under § 506(a), which states in relevant part as follows: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim." 11 U.S.C. § 506(a). In other words, under § 506(a), "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238–39 (1989). *See also, e.g., In re Graupner*, 537 F.3d

5

1295, 1296 (11th Cir. 2008) ("Generally, lien creditors are deemed to hold a secured claim to the extent of the present value of the property that the lien encumbers, while the excess, if any, is treated as a separate and unsecured claim.").

"[T]aken together, [§§ 1325(a)(5) and 506(a)] permit the bifurcation of an undersecured claim into its secured and unsecured parts, with creditors only assured of receiving full value for the secured portion of the claim. … 'The very essence of a § 1325(a)(5) modification is the write down or 'cramdown' of a secured claim to the value of the collateral securing the debt.'" *In re Paschen*, 296 F.3d at 1206 (quoting *In re Young,* 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996)).

### B. Hanging Paragraph

A Chapter 13 debtor's ability to value a secured claim and modify a secured creditor's rights in this fashion is subject to statutory exceptions. At issue in this case is an exception found in the unnumbered last paragraph of § 1325(a). This paragraph, often referred to as the hanging paragraph,[9] states in relevant part as follows:

> For purposes of paragraph (5) [of § 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor[.]

---

[9] Courts in this circuit often refer to the hanging paragraph as § 1325(a)(*) for citation purposes. *See, e.g.*, *In re Dean*, 537 F.3d 1315, 1317 n.1 (11th Cir. 2008) ("The section in question has been called the hanging paragraph because, although it is set forth as a subparagraph following 11 U.S.C. § 1325(a)(9), it is not separately designated by letter or number. Rather, it just 'hangs' without ordered designation and without surrounding context. … For purposes of this opinion, we will use hanging paragraph in text and § 1325(a)(*) for citations."). This Court will do the same.

6

11 U.S.C. § 1325(a)(*). Said another way, a claim secured by a purchase money security interest in a vehicle purchased within 910 days of the petition date is excepted from the valuation and bifurcation provisions of § 506. Claims and vehicles qualifying for this exception are often referred to as "910 claims" and "910 vehicles."

The hanging paragraph, in effect, prohibits a "cramdown" valuation for 910 claims; a debtor wanting to keep a 910 vehicle must propose to pay the full amount of the claim. *See, e.g.*, *In re Barrett*, 543 F.3d 1239, 1243 (11th Cir. 2008) ("As courts have widely recognized, the hanging paragraph prevents a bankruptcy court from approving a plan incorporating a 'cramdown' when the debtor elects to retain the 910 vehicle. In other words, because the valuation provision of Section 506(a) no longer applies to bifurcate a 910 vehicle claim, a debtor retaining the vehicle must now pay the entire claim and it is to be treated as fully secured.") (citation omitted).

### C.    Qualifying Collateral Under the Hanging Paragraph

The above exception applies by its terms only when the collateral is a "motor vehicle (as defined in section 30102 of title 49)." Section 30102 of title 49 defines "motor vehicle" as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 49 U.S.C. § 30102(a)(7).

### D.    The Parties' Positions

As noted above, the issue before the Court is whether the Manufactured Home is a "motor vehicle" within the meaning of the hanging paragraph. 21st Mortgage claims the Manufactured Home qualifies as a motor vehicle and thus the hanging

7

paragraph applies to its claim. In support of this claim, 21st Mortgage asserts (1) the Manufactured Home "was transported to the Debtors' property via highway and was drawn by mechanical power when delivered to Debtors" and (2) "[a] manufactured home is treated as a vehicle by the State of Georgia (in that it has a title certificate similar to a vehicle)." 21st Mortgage Brief at 1 [Doc. 29].

Debtors contend the Manufactured Home is not a "motor vehicle" within the meaning of the hanging paragraph because it is not a vehicle to be driven or drawn by mechanical power and it was manufactured primarily for use as a permanent shelter or dwelling. Debtors' Brief at 2 [Doc. 30].

### E. The Court's Ruling & Reasoning

The Court concludes the Manufactured Home is not a "motor vehicle" within the meaning of 49 U.S.C. § 30102 and, thus, for purposes of the hanging paragraph. The Court reaches this conclusion for several reasons: (1) it is supported by the plain meaning of 49 U.S.C. § 30102(a)(7); (2) all available persuasive authority (meager as it is) has come to a same or similar conclusion; and (3) the federal agency tasked with administering the relevant motor vehicle laws does not consider manufactured homes as motor vehicles under 49 U.S.C. § 30102(a)(7).

#### 1. The Court's Conclusion is Supported by Plain Meaning

The definition of motor vehicle has two distinct parts: it is a vehicle that is both (1) "driven or drawn by mechanical power" and (2) "manufactured primarily for use on public streets, roads, and highways."

8

As an initial matter, the Joint Stipulations of Fact are silent on how the Manufactured Home is or was ever transported, and Debtors have not otherwise conceded this issue.[10] The Court has no evidence on which it could find the Manufactured Home "was transported to the Debtors' property via highway and was drawn by mechanical power when delivered to Debtors," as asserted by 21st Mortgage. 21st Mortgage Brief at 1. The Court could overrule the objection on this basis alone.

As to the "manufactured primarily for use on public streets, roads, and highways" aspect of "motor vehicle"—manufactured homes do not appear to fit within the plain meaning of those words. The stipulations and undisputed facts reflect nothing unique about the Manufactured Home or Debtors' use of the Manufactured Home that might bring it into the ambit of 49 U.S.C. § 30102(a)(7). Moreover, 21 Mortgage's brief does not discuss this aspect of the definition and offers no alternative interpretation of "manufactured primarily for use on public streets, roads, and highways." Seeing no reason to deviate from a plain meaning understanding of these words, the Court concludes the Manufactured Home was not manufactured primarily for use on the public streets, roads, and highways and is not a motor vehicle.

---

[10] *See* Debtors' Brief at 2 (stating "Debtors contend that a manufactured home is not a vehicle to be driven or drawn by mechanical power as defined by 49 U.S.C. §30102(a)(7)").

9

### 2. The Court's Conclusion is Supported by All Relevant Persuasive Authority

Relevant authority is sparse but uniformly adverse to 21st Mortgage's objection. The only directly on point authority identified by the Court or either party is an Order Overruling Objection to Confirmation entered by Judge Lena Mansori James of the U.S. Bankruptcy Court for the Middle District of North Carolina. *See In re Renee Marie St. Fleur*, No. 20-50764, Doc. 33 (Bankr. M.D.N.C. Mar. 3, 2021) ("St. Fleur Order").[11] There, a mobile home creditor objected to a proposed valuation and bifurcation on the basis that the hanging paragraph applied to the claim. As in this case, the creditor argued the mobile home was a motor vehicle as defined in 49 U.S.C. § 30102. Judge James concluded otherwise.

As to the "driven or drawn by mechanical power" requirement, Judge James agreed with the creditor that those terms are broad enough to include a mobile home. St. Fleur Order at 3. As to the "manufactured primarily for use on public streets, roads, and highways" requirement, the creditor argued those terms made the definition of "motor vehicle" ambiguous and that "the court should look to North Carolina state law for the resolution of the question of whether a mobile home is a motor vehicle for purposes of the hanging paragraph of § 1325(a)." *Id.* 4. The court, however, saw no ambiguity. Instead, Judge James concluded that under the plain meaning of "primarily," the mobile home "was manufactured primarily for use as a permanent shelter, not for use on public roads, highways, or streets." *Id.* at 6. Judge

---

[11] This order does not appear to be published in an official reporter or available on commercial databases such as Westlaw or Lexis.

10

James further concluded that any ambiguity over the word "primarily" should be resolved in the debtor's favor. *Id.*

A similar conclusion was reached in *In re Green*, 360 B.R. 34 (Bankr. N.D.N.Y. 2007), a case involving a travel trailer rather than a manufactured home, but cited both in the St. Fleur Order and in Debtors' Brief. The creditor there similarly argued the travel trailer was a motor vehicle within the meaning of 49 U.S.C. § 30102. The debtor argued the travel trailer was "manufactured primarily as a temporary living quarters while remaining stationary." *In re Green*, 360 B.R. at 37. The court concluded the travel trailer "not a motor vehicle pursuant to the plain meaning of the words of 49 U.S.C. § 30102(a)(6) [current 30102(a)(7)]." *In re Green*, 360 B.R. at 42. The court reasoned that "[t]he plain meaning of 'primarily' is 'chief' or 'foremost', and in this Court's view the Debtor's Trailer was manufactured primarily to provide temporary shelter for persons, not to traverse the public streets, roads and highways." *Id.* The court, moreover, likewise concluded "that ambiguities in the Code should be resolved in favor of the Debtor." *Id.*[12]

Caselaw aside, the Court's conclusion in this matter is also supported by the bankruptcy treatise Collier on Bankruptcy. This treatise states (albeit without citation) that "[t]he language at the end of section 1325 would not treat a mobile home

---

[12] The Court disagrees with Debtors that *In re Nunnery*, No. 11-80267, 2011 WL 4712083 (Bankr. M.D.N.C. Aug. 17, 2011) supports their position. That case is only superficially analogous to this case. While that case involved a cramdown of a mobile home creditor's claim, it involved no dispute over any issue before this Court, let alone any analysis of the same. Presumably, this is because the mobile home at issue in *In re Nunnery* was purchased over a decade before the bankruptcy case was filed, making the hanging paragraph irrelevant. *See id.* at *1, *2 (stating the mobile home was purchased November 16, 1998, and the bankruptcy case was filed February 15, 2011).

11

as a motor vehicle subject to the 910-day rule, because a mobile home does not fit within the definition of title 49, section 30102." 8 COLLIER ON BANKRUPTCY ¶ 1325.06.

### 3. Manufactured Homes are not Motor Vehicles According to Federal Agency That Regulates Motor Vehicles

The section of Title 49 which contains the definition of "motor vehicle" is part of a larger statutory scheme governing motor vehicles—the National Traffic and Motor Vehicle Safety Act of 1966, Pub. L. 103–272, 108 Stat. 745. The National Highway Transportation Safety Administration ("NHTSA") is the agency within the U.S. Department of Transportation who administers this Act and regulates "motor vehicles" as defined under the Act. While not binding on this Court, NHTSA's pronouncements on the definition of "motor vehicles"—*i.e.*, NHTSA's regulatory domain—provide guidance as well as additional support to this Court's conclusion in this matter.[13]

The NHTSA considers mobile/manufactured homes as excluded from the definition of "motor vehicle" and has for at least 50 years, since enactment of the National Mobile Home Construction and Safety Standard Act of 1974.[14] *See, e.g.*, NHTSA Interpretation Letter to Constance Newman (Mar. 17, 1976), 1976 WL 533912, *also available at* https://www.nhtsa.gov/interpretations/aiam2279) ("I am writing in response to questions that have been raised about the National Highway

---

[13] At least one other court, also noting the lack of authority on the issue, has looked to NHTSA interpretations on the definition of "motor vehicle" for guidance. *In re Green*, 360 B.R. 34, 38–39, 40) (Bankr. N.D.N.Y. 2007).

[14] This Act was amended in 1980 to replace all instances of "mobile home" with "manufactured home." *See* Housing and Community Development Act of 1980, § 308(c)(4), Pub. L. 96–399, 94 Stat. 1614 (Oct. 8, 1980). For purposes of this opinion, "mobile home" and "manufactured home" are used interchangeably.

12

Traffic Safety Administration's (NHTSA) authority to regulate mobile homes. … The National Mobile Home Construction and Safety Standard Act of 1974 (42 U.S.C. 5401 et seq.) ('the Mobile Home Act') established within the Department of Housing and Urban Development a comprehensive program for the regulation of mobile homes. We have concluded that one result of that statute's enactment was the implied repeal of the NHTSA's authority with respect to mobile homes. Accordingly, we consider that the enactment had the effect of amending the Vehicles Safety Act's definition of 'motor vehicle' to exclude 'mobile homes' as the latter term is defined in the Mobile Home Act."); 42 Fed Reg. 7140, 7142 (Feb. 7, 1977) ("[T]he NHTSA takes this opportunity to publish in the FEDERAL RESISTER its conclusion that enactment of the National Mobile Home Construction and Safety Standards Act of 1974 (42 U.S.C. 5401 *et seq.*) (the Mobile Home Act) impliedly repealed this agency's authority to regulate mobile homes."); NHTSA Interpretation Letter to James H. Shuff (July 14, 1994), 1994 WL 17125230, *also available at* https://www.nhtsa.gov/interpretations/aiam5409 ("Mobile homes are regulated by the U.S. Department of Housing and Urban Development (HUD), and are not 'motor vehicles' subject to regulation by NHTSA.").

      To be clear: the Court's ruling in this matter derives from the plain meaning of 49 U.S.C. § 30102(a)(7), with support from every other available legal authority that has spoken on the matter. The Court views agency interpretation of "motor vehicle" merely as confirmation of the conclusion reached by this Court and every other authority that has looked at the issue.

13

## IV.   Conclusion

For all the forgoing reasons the Court concludes that the definition of "motor vehicle" in 49 U.SC. § 30102, and thus in the hanging paragraph of 11 U.S.C. § 1325(a), does not include the Manufactured Home. Accordingly, the Court overrules 21st Mortgage's objection. The Court will enter an order consistent with this opinion.

**END OF DOCUMENT**